[No. 2859.    Decided June 24, 1898.]

HARRIET LOEWENBERG, *Respondent*, v. J. N. GLOVER
*et al., Appellants.*

CANCELLATION OF DEED — MISTAKE.

Where a wife's separate property was included with that of
her husband and that of the community in a deed given by him
to secure certain creditors, the deed will be set aside as to her
separate property when it was included without her knowledge,
she being induced to sign the deed hurriedly without reading, on
the representation that only the community property and the hus-
band's separate property were covered by the instrument, and
when her property formed no part of the consideration for the
release by the creditors of their claims and no rights of innocent
third parties have intervened.

Appeal from Superior Court, Spokane County.—Hon.
LEANDER H. PRATHER, Judge.    Affirmed.

*Fenton, Bronaugh & Muir, Dolph, Mallory & Simon,
J. W. Whalley,* and *Winfree & Coman,* for appellants.

*Thomas C. Griffitts,* for respondent.

The opinion of the court was delivered by

GORDON, J.—The object of this action is to cancel a deed
of conveyance executed by Herman Loewenberg, Bernhard
Loewenberg and the plaintiff, Harriet Loewenberg, to
James N. Glover, as trustee, in so far as it purports to con-
vey certain property described in the complaint, which is
claimed by plaintiff in her own right, as her separate prop-
erty. The decree of the lower court was in favor of plain-
tiff, and certain of the defendants have appealed there-
from. The undisputed facts in the case show that in the
year 1889 the plaintiff, at that time and at all times since,
the wife of Bernhard Loewenberg, purchased in her own
right and with her separate funds the property involved

in this litigation, viz., three lots in the city of Spokane, the consideration paid therefor being $5,500. Thereafter, from her own funds, she erected a residence thereon costing in the neighborhood of $20,000, and at all times hereinafter mentioned continued to reside therein with her husband. At the time of the purchase of these lots by respondent, her husband, Bernhard Loewenberg, and his brother, Herman Loewenberg, were partners in the merchandising business in the city of Spokane. They were then in affluent circumstances, possessed of money and property amounting in value to upwards of one hundred thousand dollars, and were not indebted to any extent. On or about the first day of January, 1895, their financial condition had undergone a complete change, and at that time they were hopelessly insolvent, owing various creditors amounts aggregating a quarter of a million dollars. Among the creditors were the Merchants' National Bank of Portland, Oregon, the First National Bank of Portland, London & San Francisco Bank of Portland, the Old National Bank of Spokane, and Julius Loewenberg, as trustee of the estate of Abraham Loewenberg, whose claims amounted in the aggregate to about $150,000. These claims were represented at Spokane, Washington, by L. B. Nash, an attorney of that city, and by John M. Gearin, an attorney of Portland, Oregon, who had gone to Spokane for the purpose of effecting an adjustment. And in the negotiations for that purpose Gearin and Nash co-operated throughout, and had full power and authority, in law and in fact, to respresent their respective clients, and negotiate a settlement and adjustment of their claims. Julius Loewenberg, brother of Herman and Bernhard Loewenberg, was president of the Merchants' National Bank of Portland; and the claim of that bank against the firm of Loewenberg Brothers then amounted to upwards of $50,000, in addi-

tion to which Julius Loewenberg, as trustee, was also a creditor in an amount exceeding $12,000. Mr. Gearin went to Spokane in the latter part of December, 1894, and, in connection with Nash, immediately opened negotiations with the Loewenbergs for the purpose of getting the claims represented by the defendants in this action paid or secured. The Loewenbergs realized that they were in a condition of hopeless insolvency, and were desirous of securing and preferring the creditors represented by Gearin and Nash so far as it was possible for them to do so. This willingness on their part to prefer these Portland creditors was due very likely to the fact that their brother was president of the corporation which was the principal creditor, and Nash had been for years the attorney of the firm of Loewenberg Brothers. Confessions of judgment in favor of their respective clients were prepared by Mr. Gearin, but prior to executing the confessions it was considered by counsel that in view of threatened attachments by other creditors, the better plan would be to take a conveyance of the firm's property. The Loewenbergs were willing, and it was thereupon agreed that a bill of sale should be made of the entire stock of goods and personal property, and a deed of conveyance of all the real property owned by them, including also the community real property belonging to Bernhard Loewenberg and his wife, the plaintiff, and that James N. Glover should act as trustee for the various creditors represented by Nash and Gearin, under a declaration of trust. In consideration of such transfer and conveyance by the Loewenbergs, it was agreed that the claims represented by these creditors should be surrendered, canceled and discharged. Up to the time of arriving at this agreement, the property which is the subject of this action, and which is conceded to have been the separate property of the respondent, was not mentioned nor taken into considera-

tion, but the property to be transferred and conveyed in consideration of the cancelation of the indebtedness was to include only the property owned by the firm of Loewenberg Brothers and the separate property of the members of that firm, together with the community property of Bernhard Loewenberg and his wife. Mrs. Loewenberg, the respondent, at no stage of the proceedings figured in these negotiations. She was not consulted, and, so far as the record is concerned, it is not claimed or asserted that she was apprised of the negotiations, although, of course, the consummation of the agreement involved her signature to the deed which was to include the community property of herself and husband. It was at this juncture that Bernhard Loewenberg inquired of counsel as to the situation in which his wife's property—the home—would be left, and whether the other creditors could attach it. At least, the subject was introduced by him. Realizing that by conveying all of the firm's assets to some only of their creditors the hostility of the other creditors would be aroused, and desirous of avoiding any litigation concerning his wife's property, he seemed to consider that it would be better to include it in this deed of conveyance, indulging the hope that, when the trust was wound up, this property would be reconveyed to the wife. Up to this point the record admits of no dispute or contradiction. The lower court found, and the evidence is abundant to support the finding, that Nash and Gearin

" then and there agreed with the said Bernard Loewenberg that if said property was placed in said trust deed it would, as soon as the trust was administered, be reconveyed to his wife, the plaintiff, and that in the meantime it would be protected from question and attachment by other creditors, and that his brother, Julius Loewenberg, would have the principal control of the execution of said trust, and that he could safely rely upon his brother carrying out such agreement and protecting the property of his said wife."

Appellants' counsel argue that, if any such agreement was made, it was in fraud of other creditors, and that for that reason equity would decline to enforce it. But in urging this position we think counsel overlook the undisputed fact that this was the separate property of the wife, and in nowise liable for the indebtedness of the firm of Loewenberg Brothers. The conveyance of it could have worked no fraud upon any of the creditors of that firm, because, as matter of law, it could not have been made liable to the satisfaction of the firm's debts. But, in our view, it makes little difference whether there was any such agreement to reconvey, because, as we shall presently see, the plaintiff never in fact consented to, or had knowledge of, the inclusion of this property; and the defendants parted with nothing, and the plaintiff received nothing, on the strength of it. On the first day of January, 1895, the papers were prepared, but, that being a legal holiday, it was concluded that their execution should be deferred until the following morning, when, at the request of counsel for the creditors, a notary public was sent, with the deed to all of the real estate heretofore referred to (including the property herein involved), to the home of the Loewenbergs to procure its execution. The evidence shows that the notary public and the other witness to the deed went there before daylight, aroused the husband and wife and secured the execution and acknowledgment of the deed by both of them. The evidence clearly shows that the deed was not read over or explained to the wife, and that there was much haste, owing to the desire of the representatives of the creditors to get into possession before attachments could be levied. The complaint charged, and the lower court found, that at the time the respondent signed this deed she was not aware that it included the property here involved;

that she had never seen the deed until the morning it was executed, and did not read it then; that its contents were not made known to her by the notary; that she had been previously informed by her husband that the property to be conveyed was the real estate owned by the firm of Loewenbergs and the community real estate of herself and husband, and that it was not to include her own separate property; that she was not familiar with business, was laboring under great distress of mind owing to the financial condition of her husband and the failure of the firm, and that she would not have signed any deed conveying away her separate property had she known or been informed that that was its purpose. We think this finding is also fully supported by the evidence.

Counsel for the appellants vigorously assail the complaint, claiming that it states no cause of action in that it does not charge that the defendants or any of them perpetrated or had any knowledge of the fraud practiced upon the plaintiff by her husband; that none of the defendants made any misrepresentation to or in anywise deceived her; and that, while it charges that the plaintiff received no consideration, it does not allege that the defendants paid none. Counsel for the appellants throughout their entire brief seem to assume that the husband was the agent of the wife, with full power to contract concerning her separate real estate. There is not a particle of proof in the records which tends in anywise to show that Bernhard Loewenberg was the attorney in fact, or agent, or had any authority whatever, to make any contract or agreement with reference to his wife's separate real property. This assumption constitutes the fundamental error of appellants' position. While it is doubtless true that, in certain states which have the community system, the husband is the managing agent of both the community

real estate and the separate real estate of the wife, a. different rule is expressly provided by statute in this state, in so far as the separate property of the wife is concerned. Section 1398, 1 Hill's Code (Bal. Code, 4489), is as follows:

" The property and pecuniary rights of every married woman at the time of her marriage, or afterwards acquired by gift, devise, or inheritance, with the rents, issues and profits threof, shall not be subject to the debts or contracts of her husband, and she may *manage, lease, sell, convey, encumber, or devise by will such property, to the same extent and in the same manner that her husband can, property belonging to him.*"

Under our law, the husband has not the management of, and has no control whatever over, the separate real property of his wife. The respondent testified that she did not know that the deed contained any description of her separate property; that she was informed by her husband that it did not, and was not advised of the truth until some three weeks after it had been executed, when she at once went to Colonel Nash and demanded that her property be reconveyed to her. At that time, and for a long time thereafter, litigation was pending between other of the firm's creditors and the defendants here, growing out of the transfer to the defendants of all of the property of the firm.

The evidence is sufficient to satisfy us that respondent postponed commencing her action in the hope, and we think she was encouraged to believe, that when the litigation was terminated and the trust administered her property would be reconveyed. It is not contended that the surrender of the firm obligations was in anywise made to depend on whether this property went into the deed. Mr. Gearin, the sole witness for the defendant, testified that he did not ask that it should be put in; did not know

anything about it until the husband inquired concerning its liability for the firm's debts, and the probability of the other creditors making his wife trouble concerning it. He testified that not a cent was paid for it, that he informed the husband that he " need not put that in if he did not want to  .   .   .   but I said, ' If it goes in, it goes in like all the rest.' "

From all of the circumstances, it appears that the husband conceived the idea of putting this property into the deed in order to avoid any claim to, or litigation over, it by hostile creditors whose claims were not provided for; that he fully expected it would be reconveyed when the litigation terminated; and that he concealed from his wife the fact that it was included, in order to avoid any possible delay or refusal upon her part to execute the deed, desiring, no doubt, to spare her any anxiety concerning its safety and, manlike, deeming himself the best judge of what was for her interest. It is enough, we think, to sustain the decree of the lower court, that there was no consideration for the conveyance of this property, and that plaintiff did not know and, under the circumstances, was excusable for not knowing, that the deed included the property in question. No question arises here as to the rights of third parties. If it became necessary to determine the question, we would, upon this record, be constrained to hold that the husband became the agent of the defendants for the purpose of securing plaintiff's signature to this deed, and that his representations and concealments were binding upon them. As already observed, she was never a party to the negotiations nor financially interested in them, no representations had been made to her nor had any promises been given by her, and, without prolonging the discussion further, we think the decree of the superior court was right, and it is affirmed.

DUNBAR, ANDERS and REAVIS, JJ., concur.